**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANJI COZY HOME CO., LTD., | Case No. 2:25-cv-10102 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| THE 7TH HAVEN INC., | |
| Defendant. | |

**COMPLAINT**

ANJI COZY HOME CO., LTD. (hereinafter, "Plaintiff"), alleges herein as follows:

**I. INTRODUCTION**

1. Plaintiff brings this action against Defendant for failing to pay for goods that Plaintiff sold and delivered under commercial sales contracts. The claims are based on Defendant's breach of contract and related equitable theories.

2. Defendant entered into purchase transactions with Plaintiff for substantial quantities of furniture products supplied by Plaintiff from China. Relying on Defendant's orders, Plaintiff prepared the goods, arranged international shipment, and delivered them into the United States through the Port of Los Angeles, California.

3. Plaintiff fully performed its obligations under the contracts, yet Defendant has failed and refused to pay the agreed purchase price. Despite accepting delivery and retaining the benefit of the goods, Defendant has wrongfully withheld payment of $930,000.

4. Plaintiff alleges that Defendant's actions constitute a breach of contract, account stated, and unjust enrichment. Additionally, Plaintiff alleges that Defendant's conduct was willful and in bad faith, as Defendant intentionally accepted goods while knowing it lacked any intent to pay for them. Plaintiff now seeks full recovery of the amounts owed, together with interest, costs of suit, and such further relief as this Court deems just and proper.

## II. THE PARTIES

5. Plaintiff, ANJI COZY HOME CO., LTD., is a corporation incorporated under the laws of the People's Republic of China with its principal place of business in Shangshu Village, Shangshu Town, Anji County, Huzhou City, Zhejiang Province, China. Cozy Home is engaged in the business of supplying and exporting furniture products to customers in the United States and abroad.

6. Defendant, THE 7TH HAVEN INC., is a corporation incorporated under the laws of the State of Minnesota with its principal place of business at 333 Washington Avenue N., Suite 300-9009, Minneapolis, MN 55401. Defendant conducts business in the State of California by purchasing and importing goods that are delivered through the Port of Los Angeles.

## III. NATURE OF THE ACTION

7. This is a civil action for breach of contract arising from Defendant's nonpayment for goods sold and delivered, in violation of the Uniform Commercial Code § 2-301 *et seq*.

8. This is also a civil action for unjust enrichment under California common

law. Defendant knowingly accepted and retained the substantial benefit of goods supplied and delivered by Plaintiff without providing payment. Such retention without compensation constitutes unjust enrichment at Plaintiff's expense, and principles of equity and good conscience require that Defendant make full restitution of the amounts wrongfully withheld.

## IV. JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2).

10. This Court has jurisdiction over Defendant because Defendant purposefully availed itself of the privilege of conducting business in California by purchasing and importing goods delivered through the Port of Los Angeles. Defendant's contacts with this District are sufficient to satisfy due process, and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Specifically, the goods at issue were shipped into and delivered through the Port of Los Angeles, which is within the Central District of California.

## V. GENERAL FACTS

12. Plaintiff and Defendant were engaged in a continuing course of commercial dealings whereby Defendant regularly contracted with Plaintiff for the purchase and supply of furniture products intended for importation into the United

States.

13. Pursuant to Defendant's purchase orders, Plaintiff prepared substantial quantities of goods in China, arranged their international shipment, and delivered them for importation into the United States through the Port of Los Angeles, California.

14. On or about October 16, 2024, Plaintiff made the first shipment under this series of transactions, and the final shipment was made on or about July 6, 2025.

15. Plaintiff consistently provided the necessary documentation for each shipment, and Defendant confirmed receipt of the same. Each shipment was made on open account terms of 120 days (OA 120), requiring Defendant to remit payment within 120 days of the shipment date. The goods were delivered through the Port of Los Angeles, with customs clearance and final delivery completed within the Central District of California.

16. The goods delivered under the parties' transactions conformed in all material respects to the terms of the agreements between Plaintiff and Defendant. Plaintiff duly made the goods available to Defendant without deviation, delay, or deficiency that would excuse performance. Defendant accepted the goods into its possession and control, exercised dominion over them, and retained the benefits thereof. At no time did Defendant provide timely notice of rejection or revocation of acceptance, and Defendant's conduct constitutes full acceptance of the goods and an obligation to pay the contract price pursuant to the Uniform Commercial Code.

17. Under the invoices and agreed credit terms, each shipment was subject to

open account terms of 120 days, making payment due 120 days after the shipment date. Despite repeated demands, Defendant failed and refused to remit payment in accordance with those terms.

18. As of the date of filing, the outstanding principal balance owed by Defendant is $930,000, exclusive of interest, incidental damages, costs of suit, and any contractually provided fees.

19. At no time did Defendant provide Plaintiff with any notice of nonconformity or defect regarding the goods at issue. The goods were delivered in conformity with the parties' agreements.

20. Plaintiff has performed all conditions, covenants, and promises required on its part to be performed, or such conditions have occurred or been excused. Throughout the course of dealings, Plaintiff acted in good faith and conducted business honestly and fairly, consistently seeking to honor its commitments and maintain the integrity of the parties' commercial relationship.

21. Out of eighty-five purchase orders placed by Defendant during the course of dealings, only eight orders have been partially paid. The remaining orders remain wholly unpaid, leaving an outstanding balance of US$930,000.

22. Plaintiff repeatedly demanded payment by email and formal correspondence, provided account statements, and offered reasonable opportunities to resolve the arrears, but Defendant failed to remit payment.

23. Plaintiff has suffered significant damages as a direct result of Defendant's failure to pay for the goods supplied and delivered. These damages include at least the

unpaid purchase price of $930,000, together with prejudgment interest, incidental damages, post-judgment interest, and costs of suit.

24. Defendant's continued failure and refusal to pay has caused substantial harm to Plaintiff. The nonpayment has deprived Plaintiff of essential operating funds, disrupted its cash flow, and created significant difficulties in the ordinary course of business.

25. On or about August 30, 2025, Plaintiff's counsel sent a formal demand for payment letter to Defendant, requesting immediate payment of the outstanding balance.

26. On or about September 2, 2025 Plaintiff's counsel informed Defendant that its aggregate purchase orders totaled approximately $1,580,000, of which about US$650,000 was subject to commercial insurance. Counsel further stated that the remaining balance of approximately $930,000 was not covered by insurance and was the subject of Plaintiff's demand for immediate payment.

27. On or about September 6, 2025 Defendant formally proposed a payment plan calling for monthly installments of $50,000 beginning in October 2025, with a potential increase in the monthly amount starting in January 2026. Defendant stated that any future shipments would be paid for in advance.

28. Defendant's proposed payment plan is wholly inadequate to address the outstanding balance. At a rate of $50,000 per month, it would take well over a year and a half merely to reduce the principal amount owed, without accounting for interest, costs, or other damages. Such a plan falls far short of the parties' agreed

credit terms and fails to provide Plaintiff with the timely compensation to which it is entitled.

29. Defendant's proposal disregards the fact that Plaintiff had already extended substantial credit to Defendant under open account terms of 120 days. By unilaterally attempting to substitute a prolonged repayment schedule after defaulting on its obligations, Defendant seeks to alter the parties' original agreements to its own advantage, thereby exacerbating the harm suffered by Plaintiff.

30. Defendant's proposal to pay only $50,000 per month, while continuing to retain and benefit from the goods, underscores an intent not to satisfy its contractual obligations but instead to delay and frustrate payment. Plaintiff has at all times acted in good faith, performing its obligations diligently, extending credit under agreed terms, and consistently seeking to maintain a fair and cooperative commercial relationship. In contrast, Defendant's proposed plan demonstrates bad faith by attempting to unilaterally rewrite the parties' agreements after default, to Plaintiff's severe detriment.

31. Plaintiff fully performed its obligations by supplying and delivering substantial quantities of goods in reliance on Defendant's purchase orders, extending credit under agreed terms, and consistently acting in good faith to maintain a fair commercial relationship. Defendant accepted and retained the goods without timely rejection or revocation, yet failed and refused to pay within the contractual credit periods. Despite repeated demands and opportunities to cure, Defendant only proposed inadequate and bad-faith repayment terms that sought to delay rather than

resolve its obligations. As a direct result of Defendant's conduct, Plaintiff has suffered significant financial harm, including loss of operating funds, disruption of business operations, and unjust enrichment by Defendant at Plaintiff's expense.

## COUNT I

## BREACH OF CONTRACT

(Uniform Commercial Code § 2-301 *et seq.*)

32. Plaintiff hereby realleges and incorporates by reference each and every allegation contained above as though the same were set forth herein in full.

33. The Uniform Commercial Code establishes that a seller's obligation is to tender and deliver conforming goods, and the buyer's corresponding obligation is to accept and pay for those goods. See UCC § 2-301. Once goods have been accepted, the buyer is required to pay the contract price in accordance with the terms of the agreement. See UCC § 2-607(1).

34. The elements of a breach of contract claim under California law are: (1) the existence of a contract; (2) Plaintiff's performance or excuse for nonperformance; (3) Defendant's breach; and (4) resulting damages to Plaintiff. See *Wills v. First Republic Bank*, No. 19-17001 (9th Cir. Feb. 18, 2022).

35. Here, Plaintiff and Defendant entered into valid and enforceable contracts through Defendant's purchase orders and Plaintiff's acceptance. Plaintiff agreed to supply the goods, and Defendant agreed to remit payment within 120 days of shipment.

36. Pursuant to the agreement between Plaintiff and Defendant and UCC §

2-301, Plaintiff fully performed its contractual obligations by sourcing, arranging shipment, and delivering goods that conformed in all material respects to the terms of the contracts.

37. Defendant confirmed and accepted each shipment of goods, and was obligated under the contract to pay the full purchase price within the agreed 120-day credit terms. Despite this clear obligation, Defendant failed to remit payment as required. By withholding payment for goods duly delivered and accepted, Defendant materially breached its contractual obligations, depriving Plaintiff of the benefit of the bargains struck between the parties.

38. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages, including but not limited to the unpaid purchase price, loss of operating funds, disruption of business operations, and associated consequential harms.

39. Plaintiff has further been compelled to retain legal counsel and to incur substantial attorneys' fees and litigation costs in order to prosecute this action and enforce its contractual rights. Such expenses were necessitated solely by Defendant's wrongful conduct and are properly recoverable as part of Plaintiff's damages.

40. As a result of Defendant's breach of contract, Plaintiff is entitled to recover the unpaid purchase price together with consequential and incidental damages attributable to the breach, pursuant to UCC §§ 2-709 and 2-710.

**COUNT II**

**UNJUST ENRICHMENT**

41. Plaintiff realleges and incorporates by reference each and every allegation contained above as though fully set forth herein.

42. Pursuant to California case law, "one person should not be permitted to unjustly enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained, or appropriated, where it is just and equitable that such restitution is made." *Melchior v. New Line Productions*, Inc. (2003) 106 Cal.App.4th 779, 793.

43. Defendant knowingly accepted and retained substantial quantities of goods supplied and delivered by Plaintiff, yet has failed to remit payment for those goods and continues to derive the benefits thereof without providing compensation.

44. Out of eighty five purchase orders placed during the course of dealings between Plaintiff and Defendant, only eight orders have been partially paid. The vast majority of shipments remain wholly unpaid, leaving a substantial outstanding balance of $930,000. Defendant has retained the goods supplied and delivered by Plaintiff without providing payment, thereby obtaining benefits at Plaintiff's expense. Such conduct constitutes unjust enrichment, and equity requires that Defendant make full restitution to Plaintiff.

45. Defendant's conduct constitutes unjust enrichment in that Defendant has retained and benefited from the goods supplied and delivered by Plaintiff while shifting the corresponding costs and loss of value onto Plaintiff. Principles of equity and good conscience require that Defendant compensate Plaintiff in full by paying the amounts wrongfully withheld.

46. As a result of Defendant's unjust enrichment, Plaintiff has suffered damages, including but not limited to the value of the goods delivered, the loss of operating funds, and related consequential harms. Under principles of equity, Defendant should not be permitted to retain the benefits wrongfully obtained without compensation. Equity and good conscience therefore require that Defendant make full restitution to Plaintiff for all amounts due, together with such further relief as the Court deems just and proper.

## JURY DEMAND

47. Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1. A judgment in favor of Plaintiff and against Defendant on all causes of action alleged herein, including breach of contract and unjust enrichment;

2. An award of damages adequate to compensate Plaintiff for Defendant's failure to pay for goods sold and delivered, including but not limited to the unpaid purchase price of US$930,000, together with such additional amounts as may be proven at trial;

3. Restitution of the benefits unjustly retained by Defendant as a result of its failure to remit payment, together with all equitable relief necessary to prevent further unjust enrichment;

4. An award of prejudgment and post-judgment interest at the maximum rate permitted by law;

5. An award of Plaintiff's costs of suit, including reasonable attorneys' fees and expenses to the extent permitted by law or contract; and

6. Such other and further relief as the Court may deem just, proper, and equitable.

Dated: October 22, 2025

*Marjorie Ouyang*

Respectfully submitted
By: /s/ *Marjorie Ouyang*
Valley & Summit Law
One Park Plaza, #600
Irvine, CA 92614
Marjorie.Ouyang@valley
summitlaw.com
*Attorney for Plaintiff*